## DURABLE TOY & NOVELTY CORPORATION v. J. CHEIN & CO., Inc., et al.

District Court, S. D. New York.
May 27, 1942.

168

John P. Chandler, of New York City, for plaintiff.

Andrew Foulds, Jr., of New York City, for defendants.

CONGER, District Judge.

This is a suit for infringement of registered trade-marks. The plaintiff and the defendants are corporations of the State of New York and jurisdiction is asserted under the provisions of the trade-mark statute, 28 U.S.C.A. § 41(7).

The predecessor of the plaintiff, on May 18, 1909, registered in the United States Patent Office, the trade-mark "Uncle Sam's", No. 73,778, as a trade-mark for toy banks. This trade-mark registration was effective for twenty years from the date of issue.

In 1927 an application for a trade-mark was made by the predecessor of plaintiff comprising a black panel upon which appeared, in silhouette, the picture of a cash register with an operator standing in front of it and with the words "Uncle Sam's" in the upper part of the panel. This application matured into Registration No. 256,-533 as of May 21, 1929. In this registration as issued it is stated: "Applicant is now the sole owner of the trade-mark 'Uncle Sam' registered May 10, 1909, No. 73,778."

Plaintiff was organized in 1936 and took over the business including all assets, trade-marks and good will appertaining to such trade-marks as well as the registration thereof.

On June 24, 1941, plaintiff obtained a third registration, No. 388,453, on the words "Uncle Sam's" on a black panel with the picture of Uncle Sam thereon. This registration stated in part: "The trade-mark consisting of the words 'Uncle Sam's', has been continuously used in the business of applicant and of applicant's predecessor, the Durable Toy & Novelty Company, since 1907, and the. trade-mark has been used in the form shown in the accompanying drawing since April, 1940." The first registration has of course expired, but the latter two are still in effect.

A large part, if not the major part of plaintiff's business is the manufacture and sale of toy banks. Plaintiff's banks sell at retail from $.59 to $2.50 and carry a lifetime guarantee.

Defendant, J. Chein & Co., is a large manufacturer of toys; toys of the grade which are commonly sold in the five and ten cent stores. Sometime during the year 1941, defendant Chein & Co. commenced the manufacture and sale of a tin bank shaped as a hat and colored in red, white and blue. The hat was shaped as the one we attribute to Uncle Sam. On the top of the bank there appeared in prominent letters "Uncle Sam Bank". This tin bank was made to sell at retail for ten cents.

Defendant F. W. Woolworth Co. on or about July 7, 1941, and at other times did sell in its stores the bank so manufactured by defendant Chein & Co.

It is the plaintiff's contention that the manufacture and sale of this bank by the defendants constitutes an infringement of their trade-marks.

 The jurisdiction of this court is made out under Section 41(7) Title 28, U.S.C.A. for there are two valid trade-marks owned by the plaintiff on the words "Uncle Sam" as applied to toy banks.

On the trial it was proved to my satisfaction that banks carrying the words "Uncle Sam's" as used in connection with toy banks had come to mean the bank of this plaintiff. That commencing in 1907 plaintiff and its predecessor had been selling to the trade these banks and had been using in connection therewith as part of the trade-mark the above words "Uncle Sam" or "Uncle Sam's". This has been continuous from 1907 down to the present.

By constant and continuous usage plaintiff's trade-marks have acquired a secondary meaning; the name "Uncle Sam" or "Uncle Sam's", as applied to coin banks means the coin bank made by the plaintiff.

■ There was abundant proof that the defendant Chein & Co. used the words "Uncle Sam Bank" on its toy banks. The fact that defendant Chein & Co. has not used every aspect of the trade-mark of the plaintiff, the silhouette or figure of Uncle Sam, does not mean that there is not an infringement. On the contrary it is well settled that the whole trade-mark need not be taken. The defendant Chein & Co. has taken all of the words contained in plaintiff's trade-marks.

The testimony of experts in the toy business produced by the plaintiff shows that the name "Uncle Sam" on toy banks had become synonymous with the plaintiff in the toy industry and that of their own knowledge they knew that the public in purchasing toy banks often asked for the bank of the plaintiff as an "Uncle Sam bank".

The plaintiff has the right to be free from the competitive use of this name. The plaintiff has extensively advertised its banks as "Uncle Sam" banks. A total of some three million of these Uncle Sam banks have been sold by Durable and its predecessor since the business was organized in 1907.

When defendant Chein & Co. adopted their trade-mark they knew of plaintiff's trade-mark. Samuel Hoffman, Secretary and Treasurer of the defendant Chein & Co., admitted knowledge of the plaintiff's use of the mark and that he was familiar with the banks of the plaintiff as the toy industry in general appeared to be. Hoffman testified as follows:

"A. Well, I knew the trade-mark probably like anyone else did.

"Q. In fact, you had known of the trade-mark for about 20 years, hadn't you? A. I believe I did.

"Q. And you knew that the plaintiff was applying this trade-mark to coin banks? A. Yes."

That the bank of the defendant with the words "Uncle Sam" prominently displayed thereon would deceive the public is evident; the marks used are identical; the goods of the plaintiff and of the defendant Chein & Co., upon which the mark is used, are coin banks.

An infringer cannot avoid the charge of infringement by taking a portion of a trade-mark, providing the infringer takes enough to deceive the public. Saxlehner v. Eisner & Mendelson Company, 179 U.S. 19, 21 S. Ct. 7, 45 L.Ed. 60. In the present case the wording "Uncle Sam" constitutes all the wording in both of plaintiff's latter registrations.

The bank of the defendant Chein & Co. is a cheap toy. The bank of the plaintiff carried a lifetime guarantee and there was evidence that they made good on this guarantee where a bank was found to be defective. Plaintiff's trade-mark on its banks marked them as plaintiff's product; a sign to the public of the origin of the banks to which it was attached and an assurance that they were the genuine articles of the original producer. It was of great value to plaintiff to prevent the substitution and sale of an inferior and different article for its product. See Manufacturing Co. v. Trainer, 101 U.S. 51, 25 L.Ed. 993.

■ It was contended at the trial that the words "Uncle Sam" cannot be the subject of trade-mark. The basis for this is the assertion that the words are commonly recognized to be the insignia of the Government and people of the United States. No proof was offered that it was the official insignia of the United States. The plaintiff offered in evidence copies of letters over the signature of Secretary of State Cordell Hull to prove that it was not. These were objected to but were taken subject to later ruling. I find that these letters are not admissible. They are not official documents or copies of official documents.

■ That the words "Uncle Sam" are not the official insignia of the United States Government is a fact within the judicial knowledge of this court.

■ It appears from the evidence that there are 69 registered trade-marks on the words "Uncle Sam". That is not conclusive as to whether they can be the subject

of trade-mark but it is evidence that the Patent Office so considers them to be.

■ I can find no case in the books where the point has ever been raised or passed upon. In my opinion, the words, not being the official insignia of the United States, are properly the subject of trade-mark registration.

It was further contended by the defendant Chein & Co. that the words "Uncle Sam" were used in an old design patent and that on the expiration of that patent the words fell into the public domain subject to use by all.

On the trial there was no proof that there was ever a trade-mark use of the words in connection with this old design patent. See Goodyear Tire & Rubber Co. v. Robertson, Commissioner of Patents, 4 Cir., 25 F.2d 833. It was stipulated by the parties that no banks were produced under this old patent subsequent to 1899. The banks that had been produced are now collector's items and are not an article of commerce in its generally accepted sense.

Defendant Chein & Co. strongly urged the case of Singer Manufacturing Co. v. June Mfg. Co., 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118, in this connection. That case is not applicable to the facts in this case. In the Singer case, the word Singer had come to be synonymous with sewing machines. It is not contended here that the words "Uncle Sam" have come to mean toy banks. What the court said in President Suspender Co. v. MacWilliam, 2 Cir., 238 F. 159, 163, about the Singer case is apt here.

"It is to be observed that the doctrine of the Singer case rests upon the fact that the name had come to indicate the invention and thus constituted its generic description. * * * There is no presumption of law, without proof of the fact as above indicated, that a name used on a patented article passes to the public on the expiration of the patent."

■ I therefore find that on the expiration of the old design patent on Uncle Sam banks that the words "Uncle Sam" were not used in a trade-mark sense, that they did not fall into the public domain or that if they did plaintiff and its predecessor by long, sole and continued usage of these words have made them their own, in so far as these words apply to toy coin banks.

■ The plaintiff on the trial proved to my satisfaction an infringement of their trade-marks Nos. 256,533 and 388,453 by the defendants.

■ On the question of an accounting for profits and damages the recent decision of the United States Supreme Court in Mishawaka Rubber & Woolen Mfg. Co. v. Kresge Co., 316 U.S. 203, 62 S.Ct. 1022, 1024, 86 L.Ed. 1381 decided May 4, 1942, is in point. It is there stated:

"If it can be shown that the infringement had no relation to profits made by the defendant, that some purchasers bought goods bearing the infringing mark because of the defendant's recommendation or his reputation or for any reason other than a response to the diffused appeal of the plaintiff's symbol, the burden of showing this is upon the poacher. The plaintiff of course is not entitled to profits demonstrably not attributable to the unlawful use of his mark. Cf. Straus v. Notaseme Hosiery Co., 240 U.S. 179, 183, 36 S.Ct. 288, 289, 60 L.Ed. 590; compare Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825; Westinghouse [Electric & Mfg.] Co. v. Wagner [Electric &] Mfg. Co., 225 U.S. 604, 32 S.Ct. 691, 56 L.Ed. 1222, 41 L.R.A.,N.S., 653. The burden is the infringer's to prove that his infringement had no cash value in sales made by him. If he does not do so, the profits made on sales of goods bearing the infringing mark properly belong to the owner of the mark. Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629. There may well be a windfall to the trade-mark owner where it is impossible to isolate the profits which are attributable to the use of the infringing mark. But to hold otherwise would give the windfall to the wrongdoer. In the absense of his proving the contrary, it promotes honesty and comports with experience to assume that the wrongdoer who makes profits from the sales of goods bearing a mark belonging to another was enabled to do so because he was drawing upon the good will generated by that mark. And one who makes profits derived from the unlawful appropriation of a mark belonging to another cannot relieve himself of his obligation to restore the profits to their rightful owner merely by showing that the latter did not choose to use the mark in the particular manner employed by the wrongdoer."

I hold the defendants liable for infringement of plaintiff's copyrighted trade-mark and for unfair competition.

The plaintiff is entitled to a judgment for the relief demanded in the complaint against both the defendants herein and defendants will be required to account for profits and damages which have accrued to them through the use of plaintiff's trademarks.

In deciding this case, I have disregarded the testimony of plaintiff's witness Solomon J. Wallach. I am convinced that the greater part of his testimony was incompetent. It was objected to on a most material point but I allowed the testimony to stand subject to a motion to strike at the end of the case. No such motion was made, but the attorney for the plaintiff was to furnish me with a memorandum sustaining his contention as to the admissibility of the evidence. I received no such memorandum. Under the circumstances I strike out the entire testimony of this witness.

If findings of fact and conclusions of law are submitted, they should be triple-spaced typed, and on five days notice. The opposing counsel, if he be so disposed, should submit, on two days notice, criticisms of the proposed findings, as counter findings will avail him nothing.