MISS UNIVERSE, INC., Appellee,

v.

Alfred PATRICELLI, Appellant.

No. 298, Docket 32861.

United States Court of Appeals
Second Circuit.

Argued Jan. 13, 1969.

Decided March 20, 1969.

Mr. Alfred Patricelli, pro se.

Fred A. Freund, New York City (Sidney A. Diamond, Elizabeth Head, Kaye, Scholer, Fierman, Hays & Handler, New York City, on the brief and Morris Tyler, Lawrence W. Iannotti, Tyler, Cooper, Grant, Bowerman & Keefe, New Haven, Conn., on the brief), for plaintiff-appellee.

Before WATERMAN, KAUFMAN and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Since 1952 Miss Universe, Inc., the appellee, has annually conducted the Miss Universe Beauty Pageant. Until 1964, the week-long exhibition of feminine pulchritude consisted of two contests for the selection of two beauty queens: first, "Miss United States of America", interchangeably known as "Miss United States" or "Miss U.S.A.", selected from among entrants from the several states and the District of Columbia; and "Miss Universe", selected from the entrant from the United States and entrants from a large number of foreign countries. In 1965, and continuously thereafter, the "Miss U.S.A." contest was itself made a separate week-long pageant, preceding the Miss Universe Beauty Pageant by six to eight weeks. From 1955 to 1959, the "Miss U.S.A." contest was regionally televised in California; and, while there was no extensive television coverage from 1960 through 1964, the pageant was nationally broadcast on the CBS television network in 1965 and thereafter. In addition, it has enjoyed wide publicity and extensive coverage in newspapers throughout the country.

The appellee has, since 1952, been engaged in numerous promotional activities under the service marks "Miss U.S.A." and "Miss United States of America" and derives considerable economic benefit from these services, which include appearances by "Miss U.S.A." as a model, hostess, and representative and promoter of sponsors' products. The appellee registered the two above mentioned service marks in the United States Patent Office on May 24, 1966 under Registration Nos. 808,974 and 808,975 pursuant to applications filed in 1960.

From 1952 to 1961, appellant Patricelli was appellee's franchisee for the New England States. In this capacity, he conducted state beauty contests to select entrants to appellee's "Miss U.S.A." contest, and he regularly utilized the service marks "Miss U.S.A." and "Miss United

States of America" in connection with the selection of such entrants.

In 1959, while still appellee's franchisee, appellant organized a national beauty contest to select an American entrant to the World Beauty Pageant in London, England. Although the appellant contends that he attempted to differentiate his contest from appellee's by use of such designations as "Miss U.S.A.-World" and "Miss U.S.A.-World Beauty Pageant", the qualifying words "World" and "World Beauty Pageant" came to be omitted regularly in the programs and brochures announcing the annual contest. Similarly, the Frostie Company, with which appellant had his principal sponsorship contract after 1962, used the mark "Miss U.S.A." without the word "World" in its advertising.

In 1960, appellant's contest achieved widespread and unfavorable publicity when the contest winner was disqualified for being only 15 years old. As soon as the appellee learned of this, it promptly warned the appellant to cease using its service marks in connection with his own beauty contests. Nevertheless, between 1960 and 1966 appellant continued to use or permitted use of the mark "Miss U.S.A." in beauty contests but apparently "on a small scale and in only a few localities." Although there is evidence of at least two national television broadcasts in which appellant's winner made individual appearances under this title, the district court was justified in finding that appellee lacked knowledge of appellant's alleged infringing activities during that period.

In 1967, appellant announced plans for the first nationally televised broadcast of his beauty contest. To prevent any infringement of its registered service marks, appellee brought suit in the district court where, after a hearing, the court issued a temporary injunction prohibiting appellant from using "Miss U.S.A.", "Miss United States", "Miss U.S.A.-World", "Miss U.S.A.-World Beauty Pageant", or any other confusingly similar word or terms. Miss Universe, Inc. v. Patricelli, 271 F.Supp. 104 (D.Conn.

1967). On appeal, this court affirmed the issuance of the temporary injunction only ten days before appellant's scheduled telecast and remanded for trial; we specifically noted that our decision did not preclude the use of a "title descriptive of his contest to select a representative from the United States of America for the World Beauty Pageant in London, England, such as Miss World-U.S. A." Miss Universe, Inc. v. Patricelli, 386 F.2d 997 (2 Cir. 1967). Following the trial on the merits, findings of fact and conclusions of law were filed on July 27, 1968, but final judgment was withheld until September to permit appellant to conduct his 1968 contest in the intervening period. In its opinion, the district court upheld the validity of the appellee's two registered service marks; it found that they identify and distinguish the source and origin of appellee's services, that they have become symbols of its good will, and that they have acquired a secondary meaning. In addition, the court stated:

"34. The widespread confusion which has already taken place and is continuing to occur indicates that the press and the public will unavoidably confuse defendant's beauty contests and contest winners with plaintiff's 'Miss U.S.A.' so long as defendant uses a name for his contest and a title for his winner containing the words 'Miss' and 'U.S.A.,' or 'United States of America' or 'United States,' regardless of whatever additional words or terms may be added to them or inserted between them. Events occurring since the Court of Appeals decision have demonstrated that defendant's use of 'Miss World-U.S.A.' is likely to result in confusion with plaintiff's service marks and that such confusion has actually occurred. The tendency of the press and others to drop the word 'World' out of defendant's title appears inescapable and is inferably attributable in part to defendant's consistent failure to control and police the use of his title so as to avoid it being reduced simply to 'Miss U.S.A.,'

which is the exact wording of one of plaintiff's marks."

Miss Universe, Inc. v. Patricelli, F.Supp. (D.Conn.1968). Accordingly, the court concluded that appellant's use of any terms confusingly similar to appellee's marks, including "Miss U.S.A.-World" and "Miss World-U.S.A." constituted an infringement of appellee's service marks and unfair competition with appellee. It therefore enjoined appellant's continued use of such terms.

 The registration of appellee's service marks entitled it to the full scope of statutory protection afforded trademarks, including the provision of § 7(b) of the Lanham Act, 15 U.S.C.A. § 1057(b), that a "certificate of registration * * * shall be prima facie evidence of the validity of the registration * * * and of registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate * * *." This court has often acknowledged the "strong presumption of validity" created by registration. Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538, 542 (2 Cir. 1956). On the other hand, a mark which is "merely descriptive" of the product is entitled to no protection, unless it has acquired a "secondary" or distinctive meaning. 15 U.S.C.A. § 1052(e); W. E. Bassett Company v. Revlon, Inc., 354 F.2d 868, 871 (2 Cir. 1966); Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495, 498–499 (2 Cir. 1962). Of course, the same considerations apply to marks which utilize geographical names. See 3 Callman, Unfair Competition and Trademarks § 72 at 1121 (2d ed. 1950). In this case, the record contains substantial evidence of extensive advertising, publicity and use in support of the district court's finding that appellee's mark has acquired a "secondary" meaning, and consequently it is unnecessary to discuss appellant's argument that the marks are merely descriptive. It is clear that appellant has not carried his burden of overcoming the presumption of validity attached to registration.

██ ██ The more difficult question in this case concerns the extent to which appellee's marks are entitled to protection, that is, the determination of the outer boundary of the monopoly granted by the Lanham Act. Infringement occurs only where the use of a colorable imitation of valid marks is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C.A. § 1114(1) (a). Several factors enter the calculation of "likelihood of confusion": the degree of similarity between the marks in appearance and suggestion; the similarity of the products for which the name is used; the area and manner of concurrent use; the degree of care likely to be exercised by consumers; the strength of the complainant's mark; actual confusion; and an intent on the part of the alleged infringer to palm off his products as those of another. See Maternally Yours, Inc. v. Your Maternity Shop, Inc., *supra* 234 F.2d at 453. To the degree that the determination of "likelihood of confusion" rests upon a comparison of the marks themselves, the appellate court is in as good a position as the trial judge to decide the issue. J. R. Wood and Sons, Inc. v. Reese Jewelry Corp., 278 F.2d 157, 158 (2 Cir. 1960); Miles Shoes, Inc. v. R. H. Macy & Co., Inc., 199 F.2d 602 (2 Cir. 1952). On the other hand, the district court's findings with respect to the other relevant factors—e. g., the existence of actual confusion and the alleged infringer's intent—are subject to the "clearly erroneous" standard normally applicable to findings of fact. See Baker v. Simmons Co., 307 F.2d 458, 463–465 (1 Cir. 1962).

For purposes of comparison with appellee's registered marks, appellant's allegedly infringing marks may be divided into three categories: first, an identical mark such as "Miss U.S.A."; second, one altered by the addition of a word or words after the identical mark, such as "Miss U.S.A.-World"; and third, one altered by a word or words between "Miss" and "U.S.A.", such as "Miss World-U.S.A." Clearly appellant's use of the identical mark, "Miss U.S.A.", is "likely

to confuse" under any standard. Moreover, it may fairly be said that such designations as "Miss U.S.A.-World" share a similar high probability of confusion, because appellee's primary title "Miss U.S.A." remains intact, subject only to the additional word which need not have a qualifying meaning in the minds of consumers. On the other hand, the mark "Miss World-U.S.A." is, on its face, dominated by the distinguishable major element, "Miss World" and does not share the same tendency toward confusion. Indeed, this may have been the very consideration which prompted this court to suggest that title in 1967.

The district court's primary emphasis, however, was not on the marks themselves, but rather upon the intent of the alleged infringer and the actual confusion which occurred. It is obvious that the appellant was an evasive and unpersuasive witness. The court found that he "deliberately copied features associated with [appellee's] * * * well-known 'Miss U.S.A.' beauty pageant, * * * sought to trade on the reputation and good will associated with [appellee's] * * * service marks," and participated in his sponsor's deliberate simulation of appellee's marks in advertisements. Miss Universe, Inc. v. Patricelli, F.Supp. In addition, the court determined that actual confusion had occurred when appellant used "Miss U.S. A." and "Miss U.S.A.-World," and that it continued to occur after appellant adopted the term "Miss World-U.S.A." While there is sufficient evidence in the record to support the findings of bad faith, there is not enough to justify the determination of confusion.

■ A serious difficulty in reviewing this case stems from the trial court's making findings of fact in terms of broad generalities or conclusions, unsupported by subordinate facts. For example, its sixth conclusion of law is as follows:

"Defendant's use of the term 'Miss World-U. S. A.' as a mark or title in connection with beauty contests or pageants and/or winners or contest-

ants therein, and/or related promotional services or activities is also an infringement of plaintiff's aforesaid service marks and unfair competition with plaintiff."

*Id.* This in turn rests upon the middle sentence of the thirty-fourth finding of fact (quoted *ante*) which reads:

"Events occurring since the Court of Appeals decision have demonstrated that defendant's use of 'Miss World-U. S. A.' is likely to result in confusion with plaintiff's service marks and that such confusion has actually occurred."

What these events were and the extent to which they were generated by the use of the name "Miss World-U.S.A.", unaided by other factors such as misrepresentations by the appellant and the lack of policing by anyone, including the appellee, do not appear. Moreover, the court failed to distinguish actual confusion from circumstances which might produce it. For example, given appellant's frequent use, prior to the injunction, of the marks "Miss U. S. A." and "Miss U. S. A.-World" to describe his contest or the winner thereof, the news media's publication of those marks, and appellant's sponsor's use of them to advertise its product are not in themselves evidence of customer confusion, although they do contribute to the likelihood of confusion in the minds of readers or purchasers who may not be aware of the different contests. Furthermore, the evidence suggests that the communications media's improper use of appellee's marks, subsequent to the injunction, resulted from appellant's careless or intentional uses of appellee's service marks, from his effort to trade on the reputation and good will associated with them, and from the lack of policing. It is quite unclear that there was any confusion caused by the use by the appellant of the name "Miss World-U. S. A." stemming simply from the name itself.

■■ Instead of imposing sanctions to remedy the wrongs it decided were being inflicted upon the appellee, the trial court, at the urging of the appellee, has created a kind of *cordon sanitaire*

around the appellee's registered service marks by forbidding the appellant to use, not only the appellee's registered marks but any name containing the words of one of the registered marks plus "whatever additional words or terms may be added to them or inserted between them." This would prevent the appellant from using a name such as "Miss World Beauty Pageant Contestant from U. S. A." The appellee supports this method of protection of its service marks with a great deal of enthusiasm, and at oral argument asserted that it thereby acquired a monopoly on all names falling within the protective band, such as Miss Tiny-tot U. S. A., Miss Teenager U. S. A., Miss Appleblossom U. S. A., etc. While we refrain from passing upon whether or not the use of such names would infringe appellee's registered marks or be likely to create confusion, we conclude that the district court's injunction in the present case is too broad and too far reaching. The right to which appellee is entitled is that of being protected against encroachments on its registered marks, not of having the aid of a decree to create or support an enlarged monopoly. See William R. Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 532, 44 S.Ct. 615, 68 L.Ed. 1161 (1924); Socony-Vacuum Oil Co. v. Oil City Refiners, Inc., 136 F.2d 470, 475 (6 Cir.), *cert. denied* 320 U.S. 798, 64 S.Ct. 369, 88 L.Ed. 482 (1943).

▇ The portions of the district court's decision which upheld the validity of appellee's registered service marks, their distinguishing identity of the source and origin of its services, the good will which has attached to them and the acquisition of a secondary meaning are affirmed. The portions of the decision which concluded that the name Miss World-U. S. A. in itself infringes appellee's registered marks, causes confusion with them and constitutes unfair competition with appellee's are not reasonably supported by findings or by evidentiary material in the record and are reversed. Furthermore, a comparison of the allegedly infringing marks convinces us that, while appellant's use of any mark containing the contiguous words or abbreviations "Miss United States of America", "Miss United States", and "Miss U. S. A." is likely to confuse the consuming public, the same cannot be said about the mark "Miss World-U. S. A." which contains a different, distinguishable major element in placing the emphasis on "Miss World". The case is remanded so that the terms of the injunction may be amended to conform to this opinion.

▇ Accordingly, the district court is ordered to fashion a permanent injunction to prohibit appellant's competitive use, for the promotion or sale of goods and services, of any service mark which simulates appellee's registered marks or which does not place a prominent emphasis upon a major element distinguishable from the protected elements of appellee's registered marks. Appellant's compliance will be enforced through appropriate monetary or other sanctions devised and administered by the district court. These sanctions are to be imposed whenever the negligent or intentional act or omission of appellant, his licensees, agents, subfranchisees, sponsors, employees and all persons in active concert and participation with him have caused or brought about the proscribed use of the designated marks. Whenever the prohibited use of the marks is not caused by appellant or anyone in concert with him, however, the responsibility for policing shall rest upon the appellee who must notify the offending party or take other appropriate action. The district court should retain jurisdiction of the case for the enforcement of, and the making of any necessary amendments to, the injunction.

Affirmed in part, and reversed and remanded in part.