**EATON ALLEN CORP., Plaintiff,**

v.

**PACO IMPRESSIONS CORP. and Emanuel Fontana, Defendants.**

**No. 74 Civ. 1566.**

United States District Court, S. D. New York.

Dec. 9, 1975.

Jaspan, Kaplan & Levin, Garden City, N. Y., for plaintiff; A. Thomas Levin, Joel S. Kaplan, Garden City, N. Y., of counsel.

Kenyon & Kenyon, Reilly, Carr & Chapin, New York City, for defendants; John Scalzi, Jr., Jamaica, N. Y., of counsel.

## MEMORANDUM

LASKER, District Judge.

Plaintiff Eaton Allen Corp. (Eaton Allen) sues Paco Impressions Corp.

**532**

(Paco) and Emanuel Fontana for trademark infringement and unfair competition, seeking injunctive relief and damages. The complaint also alleges that defendants are selling products below cost in violation of 15 U.S.C. §§ 1, 13 and 15. Paco moves for summary judgment dismissing the claims of trademark infringement and unfair competition.

Eaton Allen manufactures coated paper for correcting typing errors under various registered trademarks, including the mark "Super-Ko-Rec-Type." As federally registered, the words appear inside a sunburst design with the initials "Ea" in a decorative symbol at the head of the sunburst. Paco Impressions manufactures and advertises a similar product under the name "Super Type" and "Super Type-7."

■ The standard in determining claims of trademark infringement and unfair competition is likelihood of confusion, and deceit of actual or prospective purchasers of the type of goods at issue. *Miss Universe, Inc. v. Patricelli*, 408 F.2d 506, 509 (2d Cir. 1969); *David Sherman Corp. v. Heublein, Inc.*, 340 F. 2d 377, 379 (8th Cir. 1965). Paco contends that there is no such likelihood of confusion and bases its argument on several grounds. Paco characterizes the stylized term "Super-Ko-Rec-Type" as an insignificant part of the design which Eaton Allen registered and maintains that the registered mark does not give plaintiff the exclusive right to use of the *word* "Super-Ko-Rec-Type" or any part of that word apart from the trademark's entire design. Moreover, Paco argues that the only similarities between the two names adhere in the defendants' use of the words "Super" and "Type", terms which are neither significant parts of Eaton Allen's trademark nor protectable as a matter of law. According to Paco, these words are merely laudatory and descriptive, and consequently cannot be appropriated for sole use in any particular trademark.

■ Paco's arguments are predicated on an attempt to dissect plaintiff's trademarks into its various component parts—the sunburst design; the insignia which contains the initials "Ea"; and the name "Super-Ko-Rec-Type." However, contrary to Paco's compartmentalization, the determination whether a trademark has been infringed involves a consideration of the marks in their totalities. *Jack Poust & Co. v. John Gross & Co.*, 460 F.2d 1076, 1078, 59 CCPA 1068 (1972); 3 Callman, Unfair Competition, Trademarks and Monopolies § 81.1 at p. 570. As the Court of Customs and Patent Appeals has explained elsewhere:

".  .  . a consideration of portions of marks may be a valuable aid in deciding likelihood of confusion [but], the ultimate test  .  .  . is a comparison of the trademarks in their entireties since that is the form in which they appear to the general public." *Libbey-Owens-Ford Glass Co. v. General Aluminum W. Co.*, 275 F.2d 947, 950, 47 CCPA 833 (1960).

■■ Consideration of a trademark as a whole does not, of course, prevent infringement where less than the entire trademark is appropriated. See, e. g., *Durable Toy & Novelty Corp. v. J. Chein & Co.*, 47 F.Supp. 167 (S.D.N.Y.1942); 3 Callman § 82.1(g) at p. 656. Indeed, where trademarks in issue have been differently phrased, the Court of Customs and Patent Appeals has characterized the shortened names as "telescoped versions" and has held them to be confusingly similar. *Thymo Borine Laboratory v. Winthrop Chemical Co., Inc.*, 155 F.2d 402, 403–04, 33 CCPA 1104 (1946) ("Oxol"—"Oxydol"; "Dishine" —"Dyanshine"; "Dutch Maid"—"Dutchland Maid"; "Thy-Ren"—"Thyractin").

■■ Paco goes on to argue, however, that the words "Super" and "Type", common to the trademarks of both parties here, are not protectable because "super" is merely a laudatory term and "type" is only descriptive. Paco is correct that laudatory and descriptive words (so-called "weak" marks) in themselves do not qualify for

trademark protection. However, such marks are entitled to protection if they have "acquired a 'secondary' or distinctive meaning." *Miss Universe, Inc. v. Patricelli, supra,* 408 F.2d at 509; *W. E. Bassett Company v. Revlon, Inc.,* 354 F. 2d 868, 871 (2d Cir. 1966); *Safeway Stores, Inc. v. Safeway Properties, Inc.,* 307 F.2d 495, 498–99 (2d Cir. 1962). Paco's reliance on *Supreme Wine Co. v. American Distilling Co.,* 310 F.2d 888 (2d Cir. 1962) is misplaced. The Court of Appeals in that case held only that mere laudatory words "of their own force" cannot indicate the source or origin of labled goods and cannot receive trademark protection. *Id.* at 889. That case in no way undermines the proposition that such words may acquire distinctiveness through widespread use either alone or in conjunction with other words.

Although Eaton Allen does not specifically argue that the terms "Super" and "Type" used together have acquired a secondary meaning, it impliedly asserts that this is so by its claim that Paco has made "an obvious effort to trade upon . . . the recognition given to plaintiff's mark." (Affidavit of Victor Barouh, Chairman of the Board of Directors and Chief Executive Officer of Eaton Allen, ¶5). Plaintiff has therefore raised a genuine issue as to whether it has created a secondary meaning in its use of the words "identifying the source" and whether "purchasers are moved to buy it because of its source." *Blisscraft of Hollywood v. United Plastics Co.,* 294 F.2d 694, 697 (2d Cir. 1961); see *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 461 F.2d 1040, 1042 (2d Cir. 1972). Summary judgment is accordingly inappropriate because of the presence of the issue of secondary meaning. As the court in *Exquisite Form Industries, Inc. v. Exquisite Fabrics of London* stated:

"The determination of secondary meaning . . . is largely a factual inquiry: the court must ascertain the range and extent of the mark's asso-ciations, and whether the public identifies it with its product." 378 F. Supp. 403, 410 (S.D.N.Y.1974).

Paco is correct that an index of whether a word is entitled to trademark protection is the extent of its use in designating other products or firms: (*Exquisite Form Indus. Inc. v. Exquisite Fabrics of London, supra*), that the word "Super" is used in hundreds of trademarks, (Ex.F. to Defendants' motion), and that this diminishes its right to protection. However, that factor is but one of numerous elements in establishing secondary meaning, such as the amount of advertising undertaken to familiarize the public with the mark (*Miss Universe, Inc. v. Patricelli, supra,* 408 F.2d at 509); and whether the products are bought by name (*Arnold, Schwinn & Co. v. Evans Products Co.,* 302 F.2d 765, 49 CCPA 1113 (1962)).

It is also worth noting that where products are virtually identical, as they are here, "the degree of similarity in the marks necessary to support a finding of infringement is less than in the case of dissimilar, noncompeting products." *A. Smith Bowman Distillery, Inc. v. Schenley Distillers, Inc.,* 198 F.Supp. 822, 826–28 (D.Del.1961), cited in *David Sherman Corp. v. Heublein, Inc., supra,* 340 F.2d at 382; *Exquisite Form Indus., Inc. v. Exquisite Fabrics of London, supra,* 378 F.Supp. at 412. When products are similar the alleged infringer's trademark may be a source of confusion because it appears to convey the false impression that it is a "family mark" of another party's product. 3 Callman, *supra,* at § 82.1(f), pp. 647ff.

Disputed facts remain other than those already mentioned. The Court of Appeals for this circuit has held that relief may still be granted to a plaintiff even if it has not proven that its trademark has acquired a secondary meaning if it establishes either

"(1) palming off by defendant, (2) actual deception of purchasers, or (3)

a violation by defendant of plaintiff's property rights." *Blisscraft of Hollywood v. United Plastics, supra,* 294 F. 2d at 698; *Norwich Pharmacal Co. v. Sterling Drug, Inc.,* 271 F.2d 569, 571 (2d Cir. 1959), *cert. denied,* 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960).

Victor Barouh, Chairman of the Board and Chief Executor Officer of Eaton Allen, states in his affidavit that "Plaintiff has received numerous inquiries regarding whether plaintiff is the source of defendant's product 'Super-type,' and has received numerous comments regarding the confusing similarity of name." (¶ 6) Eaton Allen should be afforded the opportunity to establish the extent of such confusion. Moreover, as Judge Learned Hand stated:

"The law of unfair trade comes down nearly to this . . . that one merchant shall not divert customers from another by representing what he sells as emanating from the second." *Yale Elec. Corp. v. Robertson,* 26 F.2d 972, 973, 974 (2d Cir. 1928).

The good faith of the alleged infringer is at issue here. Courts have found unfair competition where one party makes a studied imitation of the lettering, packaging and advertising of another. See 3 Callman, *supra,* § 81.1(h), pp. 717ff and cases cited therein. A superficial comparison of the advertising and packaging used by Eaton Allen, on the one hand, and Paco on the other shows striking similarities (Ex. B to Plaintiff's Affidavit in Opposition) and Eaton Allen alleges that Paco has purposefully tried to confuse the public.

■ The motion for summary judgment dismissing the claims of trademark infringement and unfair competition against Paco is denied because of the existence of the material issues of fact noted above, as to secondary meaning of Eaton's mark, whether there is actual public confusion, and whether Paco has sought purposely to confuse the public by imitating features of Eaton Allen's mark.

It is so ordered.