**CITIZENS NATIONAL BANK OF MERIDIAN, Plaintiff/Counter–Defendant,**

v.

**The CITIZENS BANK OF PHIL-ADELPHIA, Defendant/Counter–Plaintiff.**

**CIV. A. No. 4:00CV144LN.**

United States District Court, S.D. Mississippi, Eastern Division.

July 10, 2001.

---

Don O. Rogers, Wilbourn, Rogers & Scarborough, Meridian, Paul J. Hebert, Mark D. Sikes, Herman E. Garner, Jr., Ottinger, Herbert, Sikes & Herbert, LLC, Lafayette, LA, for Plaintiff or Petitioner.

William Brabec, Amanda K. Jones, Phelps Dunbar, Jackson, for Defendant or Respondent.

## MEMORANDUM OPINION AND ORDER

LEE, District Judge.

Citizens National Bank of Meridian (Citizens National) brought this case against The Citizens Bank of Philadelphia (Citizens Bank) asserting claims of federal trademark infringement, unfair competition and dilution under 15 U.S.C. §§ 1114 and 1125, and common law infringement, all arising from Citizens Bank's proposed opening of a full-service branch bank in Meridian, Lauderdale County, Mississippi. As relief, Citizens National asks that Citizens Bank be enjoined in Meridian and Lauderdale County from using the marks "Citizens," "Citizens Bank" and "Citizens National Bank" based on Citizens National's "long-standing history of being the exclusive business utilizing the mark in such community." This cause is now before the court on the motion of Citizens Bank for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Citizens National has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that Citizens Bank's motion is well taken and should be granted.

Citizens National was originally chartered as a state banking institution under Mississippi law in March 1888 under the name "Citizens Savings Bank," and was located in Meridian. In 1904, Citizens Savings Bank converted to a national bank under the name of "Citizens National Bank of Meridian." Citizens National has grown over the years, and has added a number of branch locations, the majority of which are in Meridian and Lauderdale County, which is the predominant geographical location of its present customers. Today, in addition to its original main banking office in Meridian, Citizens National has thirteen branch sites in Meridian and Lauderdale County. It also has branch locations in Macon, Columbus, Koscuisko, Philadelphia, Carthage, Laurel, Hattiesburg, Quitman, Waynesboro and Laurel.

Citizens Bank has been in the banking business in East Mississippi for nearly 100 years, having continually transacted business under the name "The Citizens Bank." Citizens Bank originated in Philadelphia, Neshoba County, and, like Citizens National, has expanded its operations over the years, opening four branches in Neshoba County in the years 1972, 1975, 1978 and 1985, respectively, and thereafter opening additional branches in Carthage and Madden, in Leake County; in the towns of DeKalb and Scooba in Kemper County; in Koscuisko, Attala County; Sebastapol, Scott County; and Union, Newton County. In addition to these branch locations, Citizens Bank opened a loan production office in Meridian in 1995. All of these branches and the loan production office have operated under the name "The Citizens Bank of Philadelphia."

In May 2000, Citizens Bank applied for permission with the Federal Deposit Insurance Corporation (FDIC) to locate a

full-service branch bank in Meridian, Lauderdale County, Mississippi, and contemporaneously applied for approval from the Mississippi Department of Banking and Consumer Finance to open the branch bank. Citizens National lodged an objection to Citizens Bank's application, claiming that it had acquired common law rights and protection to exclusive use of the names "The Citizens National Bank of Meridian, Mississippi," "The Citizens National Bank of Meridian," "The Citizens National Bank," "CNB," "The Citizens Bank," and "Citizens," and contending that because of the similarity in the names and logos of the two banks, public confusion and deception would result if Citizens Bank's application were approved.

Despite Citizens National's objection, the FDIC approved the application, and subsequently, following an investigation/inquiry, the Commissioner of the Mississippi Department of Banking and Consumer Finance recommended approval of Citizens Bank's request. With respect to Citizens National's objection on the ground of public confusion, the Commissioner opined that Citizens National and Citizens Bank "have sufficient differential to avoid confusion." The State Board of Banking Review, after considering testimony and other evidence, hearing argument of counsel and receiving the Commissioner's recommendation, voted unanimously to approve establishment of the Meridian branch of Citizens Bank.

Thereafter, following rejection by the regulatory authorities of its objections and approval of the Citizens Bank's application to establish a Meridian branch, Citizens National filed the present action for trademark infringement, contending that Citizens Bank is attempting to "invade Meridian and Lauderdale County by opening and promoting a full service bank under a mark confusingly similar to [Citizens National's] mark."

In its motion for summary judgment, Citizens Bank argues, *inter alia*, that the term "citizens" is not entitled to trademark protection because it is a generic term; that significant and widespread use by third parties of the name "Citizens" or "Citizens Bank" renders Citizens National's claimed mark extremely weak; and that there is consequently no likelihood of confusion between Citizens Bank and Citizens National, and hence no trademark infringement or unfair competition. Citizens National submits, though, that Citizens Bank's summary judgment motion must be denied as there exist genuine issues of material fact regarding "whether the activities to be engaged in by Citizens Bank, with its new Meridian branch, are likely to cause confusion regarding the source or origin of the services of Citizens National Bank in Lauderdale County."

In a trademark infringement case such as this,[1]

1. When a mark is unregistered, the parties' rights are determined according to common law. Protection of registered marks is governed by Section 43(a) of the Lanham Act, which prohibits the use of a mark that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person as to origin, sponsorship, or approval of his or her goods, services or commercial activities." 15 U.S.C. § 1125(a). And 15 U.S.C. § 1114(1) provides:

Any person who shall, without the consent of the registrant

(a) use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

[t]he essential question is the "likelihood of confusion" concerning the identity or association between [Citizens National] and [Citizens Bank] due to their common use of the name and mark ["Citizens."] 15 U.S.C. § 1114(1); *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496 (5th Cir.1979), *cert. denied*, 444 U.S. 932, 100 S.Ct. 277, 62 L.Ed.2d 190 (1979). In assessing whether there is a likelihood of confusion with respect to service marks, [the court] weigh[s] several objective factors: type of service mark, similarity of design, similarity of service, identity of service facilities and customers, similarity of advertising media used, defendant's intent and actual confusion. *Roto–Rooter Corporation v. O'Neal*, 513 F.2d 44 (5th Cir.1975).

*Sun Banks of Florida, Inc. v. Sun Federal Sav. and Loan Ass'n*, 651 F.2d 311, 314 (5th Cir.1981). In this case, having considered these relevant factors, and having done so in the light of the Fifth Circuit's decisions in *Sun Banks* and *First Southern Federal Savings & Loan Association of Mobile, Alabama v. First Southern Savings and Loan Association of Jackson County, Mississippi*, 614 F.2d 71 (5th Cir. 1980), the court concludes that Citizens Bank's motion should be granted.

Regarding the "type of service mark," that being the first of the relevant "objective factors,"

[s]ervice marks fall into four categories. A strong mark is usually fictitious, arbitrary or fanciful and is generally inherently distinctive. It is afforded the widest ambit of protection. *See Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d at 259, quoting Lunsford, *Trademark Basics*, 59 Trademark Rep. 873, 878 (1969). A descriptive mark tells something about the product; it is protected only when secondary meaning is shown. *See Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111 (5th Cir.1979), *cert. denied*, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980); *Miss Universe, Inc. v. Patricelli*, 408 F.2d 506 (2d Cir.1969). *But see Hesmer Foods, Inc. v. Campbell Soup Company*, 346 F.2d 356 (7th Cir.), *cert. denied*, 382 U.S. 839, 86 S.Ct. 89, 15 L.Ed.2d 81 (1965) (barbecue beans used as a description, not as a trademark). In contrast to the above is the suggestive mark, which subtly connotes something about the service or product. Although less distinctive than a fictitious, arbitrary or fanciful mark and therefore a comparatively weak mark, a suggestive mark will be protected without proof of secondary meaning. *See Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184 (5th Cir.1980) ("If used as a trademark for refrigerators, the term 'Penguin' would be suggestive."). Lastly, there are generic terms, which communicate "information about the nature or class of an article or service," *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 11 (5th Cir.1974), and therefore can never become a service or trademark.

*Sun Banks*, 651 F.2d at 315.

Citizens Bank argues that "citizens" is such a generic term that it should receive no protection, whereas Citizens National submits that the mark "citizens" is arbitrary, as it does not suggest the product or service offered by Citizens National, i.e., banking services. Citizens National main-

---

The focus of an infringement claim, whether brought under common law or the Lanham Act, is on whether there is a "likelihood of confusion."

The court would note that in this case, Citizens National had no registered mark at the time it filed suit but has recently received approval and registration of the mark "Citizens National Bank of Meridian."

tains that "citizens" cannot be a "generic" term since it is not a "genus or class of things or services, of which the particular item in question is merely a member," *Union Nat'l Bank of Texas, Laredo, Texas v. Union Nat'l Bank of Texas, Austin, Texas*, 909 F.2d 839, 842 (5th Cir.1990) (defining "generic"). More to the point, "citizens" does not identify banking services. However, neither is the word "first" a "genus or class of things or services" of which banking services is a member, and yet in *First Southern Federal Savings & Loan Assoc. of Mobile, Alabama v. First Southern Savings and Loan Association of Jackson County, Mississippi*, 614 F.2d 71 (5th Cir.1980), the Fifth Circuit concluded that "first" was a generic term that was not subject to trade name protection.[2]

On the other hand, in *Sun Banks of Florida, Inc. v. Sun Federal Sav. and Loan Ass'n*, 651 F.2d 311, the Fifth Circuit "[did] not necessarily disagree with the trial judge that Sun Banks' mark should be categorized as 'arbitrary.' " *Id.* at 315. The court acknowledged that "[a] vital factor in the determination whether there is a likelihood of confusion between ... two service marks ... is the strength or weakness of [the claimant's] mark," *id.*, but held that the label or categorization of the mark was ultimately not determinative, stating,

> [The arbitrary] label alone, however, does not precipitate absolute protection. Arbitrariness refers to the quality of a mark, i.e., that it bears no relation to the service provided. The ultimate strength

of a mark, the key inquiry before us, is determined by a number of factors which establish its standing in the marketplace.

*Id.* The court went on to explain that even an arbitrary mark may be so weak as a result of other factors, such as extensive third-party use, as to negate any likelihood of confusion. *Id.* at 315–17.

As is clear from *Sun Banks*, regardless of how the mark at issue should be classified, whether as arbitrary, generic, suggestive or descriptive, the classification alone is not dispositive, and consideration must be given to other circumstances which bear on the strength of the mark, including third-party use.

On that point, the court in *Sun Banks* found that the evidence of widespread third-party use completely undermined the plaintiff's claim of trade name infringement, despite the plaintiff's proof that apparently satisfied all the other "objective factors." For example, even though the district court had "placed considerable emphasis on the common word usage (in the names of the two banks) 'because it tends to immediately suggest a connection between the two institutions'," *id.* at 317, the Fifth Circuit "fail[ed] to perceive an 'immediate connection' in light of such common use of the word 'Sun' by Florida businesses," *id.*

Further, in *Sun Banks*, as here, there was substantial similarity in the services offered by the parties, and,

> [w]ith this similarity of service comes the potential for the public's mistaken

2. In *First Southern*, a common law infringement case under Mississippi law in which the issue was whether the names "First Southern Federal Savings and Loan Association of Mobile, Alabama," and "First Southern Savings and Loan Association of Jackson County, Mississippi," was confusingly similar, the court found it unnecessary to journey beyond the threshold question of whether "the word or

phrase was initially protectable," for, after noting the general rule that generic names, such as "first," and geographical names, like "Southern," are not subject to trade name protection, the court held that "[b]ecause 'First Southern' is a combination of a generic and a geographical term, ... it is not subject to protection under Mississippi common law." 614 F.2d at 74.

assumption of connexity between the providers of related services. The more likely the public is to make such an association, the less similarity in the marks is needed for a finding of likelihood of confusion. *See American Foundries v. Robertson,* 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317 (1926); *Exxon Corp. v. Texas Motor Exchange of Houston, supra.*

*Id.* at 318. The court concluded, though, that the "inherent degree of similarity" between the services offered by the parties was "but one factor to be evaluated in assessing the likelihood of confusion," and was not "the dispositive factor." *Id.* Likewise, the court recognized that there was substantial identity of service facilities and customers inasmuch as

> both businesses operate[d] from substantially similar facilities and [were] capable of attracting similar customers. The identity of service facilities for the most part include[d] branch offices and subsidiary banks located in areas of high exposure such as shopping centers or large residential areas. The identity of customers, in turn, [was] largely the result of comparable services offered.

*Id.* The court "again [found] this factor to be of some weight," *id.* citing *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d at 262 ("Dissimilarities between the retail outlets for and the predominant consumers of plaintiff's and defendants' goods lessen the possibility of confusion, mistake, or deception."), but that it was "insufficient to overcome the result commanded by [the court's] other inquiries." *Id.*

The fact that both of the parties in *Sun Banks* had carried on advertising "through much of the same media," also "ha[d] a bearing on likelihood of confusion," *id.* (citing *Exxon Corp. v. Texas Motor Exchange of Houston,* 628 F.2d at 506 ("The greater the similarity in the campaigns, the great-

er the likelihood of confusion.")); but this factor, too, was deemed "insufficient to sustain a finding of likelihood of confusion in light of the restricted range of protection to which Sun Banks' weak mark is entitled." *Id.* at 318.

On the issue of intent, the *Sun Banks* court stated that a latecomer's adoption of "another's name or mark, deliberately seeking to capitalize on the other's reputation and benefit from the confusion, is an important factor for any court." *Id.* at 318–19. Yet even after noting the existence of evidence of a damaging remark by the defendant's president which the lower court had interpreted as evidence of such intent, the Fifth Circuit in *Sun Banks* still did not consider whether or not the lower court's finding was accepted to be "a controlling factor in our ultimate decision." *Id.* at 319.

The final "objective factor" in the analysis, namely, "actual confusion," was also considered, and although there was evidence of "several isolated instances of uncertainty whether there was a connection between the two businesses," the court found that the amount of such confusion was "negligible" in light of the number of transactions conducted, and was not particularly relevant in any event, since the incidents did not involve customers considering whether to transact business with one or the other of the parties. *Id.* The court noted that

> [s]uch evidence of confusion should be given appropriate consideration. In determining the likelihood of confusion, however, a court must consider all of the evidence, including countervailing circumstances which lessen the impact of asserted instances of confusion. *See First Southern Fed. Sav. v. First Southern Sav.,* 614 F.2d 71 (5th Cir.1980) (no substantial likelihood of confusion even

though actual confusion existed on several occasions).

*Id.* at 319. The only "countervailing circumstance" identified by the court, though, was the weakness of Sun Banks' mark.

Turning to the case at bar, "Citizens" or "Citizens Bank," even assuming for the sake of argument that either or both of these is a relevant mark, is not a strong mark. "Bank" is obviously a generic term; and "citizens," even if not generic when used for a bank, is nevertheless a common term, as evidenced by the fact that it is used in the names of numerous and varied businesses and organizations. There are, for example, 168 businesses registered with the Secretary of State in Mississippi with the word "citizens" in their names. The name, in fact, is used rather often in the names of financial institutions. In Mississippi, for example, there are seven banking institutions, with 57 branch locations throughout the state, with the words "citizens" and "bank" in their names, including Citizens Bank located in Marshall County; Citizens Bank, Marion, County; Citizens Bank & Trust Co., Quitman County; Citizens Bank and Trust Company, Winston County; Citizens State Bank, Simpson County; The Citizens Bank of Philadelphia, Mississippi, Neshoba County; and Citizens National Bank of Meridian, Lauderdale County. Nationwide, there are 372 institutions registered with the FDIC with the name "Citizens Bank" or some derivation thereof. *See Sun Banks,* 651 F.2d at 316 (noting evidence of sampling of other businesses across the country having federally registered trade and service marks using the word "Sun," and finding "the extensive third-party use of the word 'Sun' impressive evidence that there would be no likelihood of confusion between Sun Banks and Sun Federal").[3]

While this evidence of third-party use is not as extensive as the evidence presented in *Sun Banks,* it nevertheless leads the court to conclude that summary judgment is warranted in view of the weakness of the Citizens trade name, and the absence of any countervailing circumstances which would tend to show a likelihood of confusion.

In this regard, while Citizens Bank currently has no full-service banking locations in Meridian or Lauderdale County, Citizens Bank has branches in neighboring counties to the north and west, namely, Kemper County, Neshoba County and Newton County, and it has a number of other branch locations in and around East Mississippi. In all of these locations, Citizens Bank has openly used its name Citizens Bank for years. Citizens Bank has also operated a loan production office in Meridian since 1995.[4] Citizens Bank has

---

**3.** The *Sun Banks* court cited several examples from other cases of widespread third-party use of marks negating likelihood of confusion, as follows:

> *Armstrong Cork Co. v. World Carpets, Inc.,* 597 F.2d 496, 505 (5th Cir.1979) wide use of mark "World" results in little likelihood of confusion; *Holiday Inns. Inc. v. Holiday Out in America,* 481 F.2d 445, 448 (5th Cir.1973); (common word "Holiday" is of weak trademark significance); *El Chico, Inc. v. El Chico Cafe,* 214 F.2d 721, 725 (5th Cir.1954) (27 trademark registrations of "El Chico," along with the fact it was the name of a Moorish king of Granada in

1482, and is the name of a Mexican town and a river in the Philippines, make the term a weak trade name deserving limited protection).

*Sun Banks,* 651 F.2d at 316. Other cases cited by the court included *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 260 (5th Cir.1980) (72 third-party registrations of the mark "Domino"); *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.,* 494 F.2d 3, 11 (5th Cir.1974) (multiple uses of the mark "Heritage"). *Id.*

**4.** The court does not attach much significance to the presence of loan production office in Meridian, since it is not well marked or well

over 1800 Lauderdale County customers through these other offices, with loans and accounts totaling $23 million, approximately $9 million of which is exclusive of the loan production office.

Citizens Bank is already included in the white and yellow pages of the Meridian and East Mississippi telephone directories; and while perhaps not specifically targeting Lauderdale County residents, it actively and regularly advertises in the Meridian/Lauderdale County are by a newspaper, The *Meridian Star,* and by local television and local radio stations. Thus, while Citizens National has been the only bank with full service bank locations in Meridian and Lauderdale County for 112 years using the name "Citizens", it is not the only bank using the name "Citizens" to which Meridian and Lauderdale County residents have

been exposed, a fact which lessens any potential for confusion. Notable, too, is the fact that the logos of the two banks are readily distinguishable.

Moreover, Citizens Bank competes directly with Citizens National in Philadelphia, Carthage and Kosciusko, where both banks have branches. In this vein, in fact, while it is by no means determinative, there is, in the court's view, at least some relevance in the fact that Citizens National itself voluntarily entered into direct competition with Citizens Bank in Citizens Bank's "home" market, Philadelphia, and also entered opened a branch in Carthage, where Citizens Bank was already doing business. Citizens National evidently did not consider the potential for "likelihood of confusion" a deterrent to its entering those markets.[5]  And while Citizens National

---

advertised or well identified as a Citizens Bank location. Still, though, it is reasonable to infer from the fact that there is this loan production office in Meridian that at least some of Meridian/Lauderdale County's citizenry are aware of Citizens Bank by virtue of that office.

5. In addition to the grounds addressed in the text, Citizens Bank argues that it is also entitled to summary judgment on the basis that Citizens National's failure to object to Citizens Bank's use of the name "Citizens Bank" for "almost 100 years," or to Citizens Bank's use of that name for almost twenty years in the same markets as Citizens National constitutes laches and cars any claims of trademark infringement. Additionally, Citizens Bank maintains that Citizens National is collaterally estopped from pursuing its claims in this action in light of findings by the FDIC, the Mississippi Department of Banking and Consumer Finance and the State Board of Banking Review of no likelihood of confusion. While the facts upon which these arguments are premised do bear somewhat on the court's resolution of the substantive issue of infringement vel l non, the court is not impressed with the legal conclusions which Citizens Bank maintains follows from the facts. That is to say, the court is not persuaded that the approval by federal and state regulatory

authorities entailed a necessary and specific finding of "no likelihood of confusion" such as would support a conclusion that collateral estoppel applies; nor is the court persuaded that the fact that the doctrine of laches has any application, since to date, while Citizens Bank has once before moved into an area in which Citizens National was already doing business, in that case, Citizens National had only been in that particular market for a short time, and it was not a situation in which Citizens Bank was expanding into Citizens National's "home market." Accordingly, there has arguably been no real occasion to date for objection by Citizens National. And Citizens Bank's laches defense cannot fairly be premised on the fact that Citizens Bank did not object when Citizens National entered into markets previously served only by Citizens Bank, including Citizens Bank's "home turf."

The court does consider the fact that Citizens National has entered into markets that were first served by Citizens Bank to be otherwise relevant, however. And further, while collateral estoppel may not apply, the court nevertheless is in accord with the observations and conclusions of the Commissioner of the Mississippi Department of Banking and Consumer Finance in his report and recommendation, as follows:

submits that there have been instances of actual confusion in those other markets, they apparently have not been debilitating.

In this regard, Citizens National has presented as an exhibit a "log of confusion" which is purported to be a record of instances of confusion recorded by Citizens National employees dating from May 2000, which Citizens National claims shows over two hundred incidents of confusion in less than seven months. However, few of those incidents relate to "potential customer[s] concerning the transaction of business." *Sun Banks*, 651 F.2d at 318. Accordingly, this evidence has little bearing on the likelihood of relevant confusion.[6]

In addition to its "log of confusion," Citizens National has presented survey evidence which it maintains creates a triable issue on the central issue, likelihood of confusion. The court concludes that it does not. The survey evidence does show that the citizenry of Meridian and Lauderdale County recognize Citizens National's name, and are aware of the presence and nature of Citizens National's business in Meridian and Lauderdale County. However, Citizens Bank readily admits that the people of Meridian and Lauderdale County

are familiar with Citizens National Bank of Meridian. Those surveyed were not queried in matters of name confusion, and the survey results otherwise do not suggest that confusion would likely follow in the event of Citizens Bank's opening a Meridian branch. Simply put, the fact that customers of Citizens National have not had to differentiate between Citizens National and Citizens Bank because Citizens National was for many years effectively the only bank in town using the name "Citizens" does not mean that customers cannot do so or that they are not likely to do so, and plaintiff's survey evidence does not suggest otherwise.

In this vein, the Fifth Circuit in *Sun Banks*, quoting 3 Callman, Law of Trademarks § 82.1(i), at 722, noted that " '[w]hether an addition is sufficient to prevent confusion in a particular instance depends upon the strength of the main part of the mark and the distinctiveness of the additional feature. Where a trademark is itself weak, minor additions may effectively negate any confusing similarity.' " *Id.*, 651 F.2d at 318. And just as the Fifth Circuit found in *First Southern, supra,* that the terms "First Southern Federal

---

[CNB] had no problem with name similarity when establishing branch banks of its own in Carthage and Philadelphia where [The Citizens Bank] was already in operation nor does there appear to be a problem in Kosciuisko where [CNB] was in operation when [The Citizens Bank] established a branch there. Of note, [The Citizens Bank] has operated a loan Production Office ("LPO") at the proposed branch location since July 1995 without any comment to the "Commissioner" from [CNB].

The Commissioner also determined that "Sample logo-advertisements submitted by 'Procestant' show sufficient disparity to prevent confusion." And he noted that "numerous banks operate within the same municipalities with name similarities without undue public confusion," and that both banks already "operate in Carthage, Philadelphia and Kostiuski with no apparent confusion from

the public, as evidenced by no consumer complaints to the 'Commissioner.' "

**6.** Citizens National notes that it need not prove bad faith, or intent to confuse the public in order to prevail, but argues that "the bad faith intent of defendant moving into Meridian and Lauderdale County can be inferred from the actual confusion evidence outside of Meridian and Lauderdale County where defendant and plaintiff are competing." Even aside from the fact that any such confusion is attributable to Citizens National's having invaded markets already served by Citizens Bank, in the court's opinion, bad faith on the part of Citizens Bank is hardly a reasonable or fair inference from nothing more than the fact that there have been instances of public confusion in other markets, particularly where those instances do not involve customers' decisions on where to do their banking.

Savings and Loan Association of Mobile, Alabama," and "First Southern Savings and Loan Association of Jackson County, Mississippi," were "not so similar as to be reasonably calculated to deceive the public," *id.*, and just as the court held in *Sun Banks* that there was no likelihood of confusion between the service marks of "Sun Banks of Florida" and "Sun Federal Savings and Loan Association," the court herein concludes, based on the undisputed evidence of record, that "The Citizens Bank of Philadelphia" and "Citizens National Bank of Meridian" are "not so similar as to be reasonably calculated to deceive the public," and that there is no likelihood of confusion between the parties' marks. Accordingly, the court concludes that Citizens Bank's motion for summary judgment should be granted.[7]

---

**7.** In addition to its claims of trademark infringement and unfair competition, Citizens National also alleged a claim of dilution. That claim has no relevance in the context of this case. The court in *Sun Banks*, quoting from its earlier decision in *Holiday Inns, Inc. v. Holiday Out in America*, 481 F.2d 445, 450 (5th Cir.1973), explained as follows regarding dilution:

> Dilution is a concept most applicable where a subsequent user uses the trademark of a prior user for a product so dissimilar from the product of the prior user that there is no likelihood of confusion of the products or sources, but where the use of the trademark by the subsequent user will lessen the uniqueness of the prior user's mark with the possible future result that a strong mark may become a weak mark.

*Sun Banks*, 651 F.2d at 313.