55 CCPA

**STANDARD INTERNATIONAL CORPO-
RATION, Assignee, by Merger of the
Bon Ami Company, Appellant,**

v.

**AMERICAN SPONGE AND CHAMOIS
COMPANY, Inc., Appellee.**

Patent Appeal No. 7949.

United States Court of Customs
and Patent Appeals.

May 23, 1968.

Mason, Fenwick & Lawrence, Edward
G. Fenwick, Jr., Washington, D. C., for
appellant.

Alex Friedman, New York City, (Blum,
Moscovitz, Friedman, Blum & Kaplan,
New York City, of counsel) for appellee.

Before RICH, Acting Chief Judge, and
SMITH, ALMOND and KIRKPAT-
RICK,* Judges.

KIRKPATRICK, Judge.

American Sponge and Chamois Com-
pany, Inc. seeks registration of "DUST
'N GLOW" for a cleaning and polishing
cloth, impregnated with a polish. Rely-
ing on prior use and registration on the
Supplemental Register of "DUST 'N
WAX" for furniture polish, Standard
International Corporation opposes, alleg-
ing that "DUST 'N GLOW" so resembles
"DUST 'N WAX" as to be likely to cause
confusion, or to cause mistake, or to de-
ceive. The Trademark Trial and Appeal
Board dismissed the opposition.[1]

The board found, and appellee does not
dispute, that "the goods of the parties
would readily be assumed to originate
with a single source if sold under the
same or similar marks."

In concluding "there is no likelihood of
confusion, or mistake or deception," the
board stated:

> The only similarity between the
> marks in issue resides in the parties'
> use of "DUST 'N." Opposer's mark
> possesses an obvious descriptive conno-
> tation as applied to its furniture polish
> which waxes as one dusts. In this re-
> gard we note that opposer's registra-
> tion of "DUST 'N WAX" issued on the
> Supplemental Register. Applicant's
> mark, on the other hand, merely sug-
> gests that which opposer's mark says
> definitively. Moreover, the end por-
> tions of the marks are different. Op-
> poser's mark is inherently weak and
> where a party uses a weak mark, his
> competitors may come closer to such
> mark without violating his rights.

---

\* Senior District Judge, Eastern District of
Pennsylvania, sitting by designation.

1. Result reported at 149 USPQ 902.

In support of its view the board cited Fleetwood Company v. Hazel Bishop, Inc., 352 F.2d 841, (CA 7, 1965); Sure-Fit Products Co. v. Saltzson Drapery Co., 254 F.2d 158, 45 CCPA 856, (1958).

We agree that the opposer's mark is inherently weak, but the "DUST 'N" part of it is not entirely without a certain distinctiveness and although the end portions of the marks are entirely different words, "GLOW" is at least suggestive of the effect of using a wax polish upon furniture.

■ We do not agree with the conclusion reached by the board. It is true, as pronounced in the *Fleetwood* and *Sure-Fit* cases, that owners of inherently weak trademarks do not ordinarily enjoy the wide latitude of protection afforded owners of strong marks. However, a mark which is initially a weak one may, by reason of subsequent use and promotion, acquire such distinctiveness that it can function as a significant indication of a particular producer as source of the goods with which it is used. Clinton Detergent Co. v. Proctor & Gamble Co., 302 F.2d 745, 49 CCPA 1146, (1962), and Jenkins Publishing Co. v. Metalworking Publishing Co., 315 F.2d 955, 50 CCPA 1218, (1963). In the present case, we think the original weakness of appellant's mark, which limited its registration to the Supplemental Register, is offset significantly by appellant's subsequent expenditures for promotion and the resulting sales.

■ Thus, sales of "DUST 'N WAX" polish from the period 1961 through the first nine months of 1964 exceeded $4,000,000 and advertising expenses in connection with the mark during the same period amounted to in excess of $2,000,000. The predominant portion of those sales and expenditures took place before May 27, 1963, the date appellee filed its application for registration and to which it is limited for first use because of absence of any proof of earlier use.[2] See Kiekhaefer v. Willys-Overland Motors Inc., 236 F.2d 423, 43 CCPA 1013, (1956). Recognizing that each case must be considered on its own facts, we are of the view that "DUST 'N WAX" has acquired such significance as an indication of the source of appellant's polish that the use of "DUST 'N GLOW" for appellee's polishing cloth is likely to cause confusion or mistake or to deceive. Under the circumstances, appellee has acted at his peril in adopting so similar a mark for such closely related goods and any doubt there might be must be resolved against him. Clinton Detergent Co. v. Proctor & Gamble Co., supra; United States Time Corp. v. Jacob Tennenbaum, 267 F.2d 327, 46 CCPA 895 (1959).

The decision of the board is reversed.

Reversed.

2. Appellant's evidence shows total sales of "DUST 'N WAX" polish for 1961, 1962 and first six month of 1963 to total over $2,790,000 and total promotional expenses for the same period to be over $1,490,000.