59 CCPA

**JACK POUST & COMPANY, INC.,**
**Appellant,**

v.

**JOHN GROSS & COMPANY, Appellee.**
**Patent Appeal No. 8618.**

United States Court of Customs
and Patent Appeals.
June 15, 1972.

Alex Friedman, New York City, attorney of record, for appellant.

Albert H. Kirchner, attorney of record, for appellee.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and RAO, Judge, United States Customs Court, sitting by designation.

BALDWIN, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board [1] dismissing an opposition to appellee's application [2] to register CHERRY JUBILEE, the word CHERRY being disclaimed, for wine. Appellant asserts that appellee's mark so resembles CHERRY JULEP, used and registered [3] by appellant prior to appellee's asserted first use, and CHERRY JUBILEE, allegedly used by appellant's predecessor since a date prior to appellant's asserted date of first use, both used for wine, as to be likely to cause confusion or to cause mistake or to deceptively cause purchasers to believe that appellee's wines have their origin with appellant.

Appellant introduced evidence including testimony of its president, Jack Poust, and documentary exhibits. Appellee took no testimony and thus is restricted to its filing date for first use.

Appellant's claim to rights in the mark CHERRY JUBILEE is based on activities beginning one year before Poust testified in December of 1967. Poust testified that he was advised through the Customs Bureau at that time that a shipment of CHERRY JUBILEE wine was coming into the country. He stated that he then contacted a representative of Tower Eximpo, Inc., the importer, whom he advised that he considered CHERRY JUBILEE an infringement of the mark CHERRY JULEP. Poust further stated that appellant then bought the imported CHERRY JUBILEE stock and sold it and that Tower Eximpo, Inc. "transferred the rights of the label, the brand name" to appellant. The sale of the label was said to have occurred some time in May 1967.

Appellant offered certain documentary material procured from Tower Eximpo with the explanation that it was all that was available because that company was small and had destroyed its records. The material consisted of a photocopy of an Internal Revenue Service certificate of approval of a CHERRY JUBILEE label issued February 8, 1960 to Tower Eximpo, Inc.; a copy of a schedule of minimum consumer resale prices on CHERRY JUBILEE wine dated March 31, 1960; and two Tower Eximpo invoices, dated January 2, 1963 and March 1, 1963, referring to two shipments of CHERRY JUBILEE wine by that company to a consignee in New York.

The board ruled that the testimony of Poust regarding use of CHERRY JUBILEE by Tower Eximpo, the certificate of label approval and the schedule of minimum resale prices were not probative of any sales prior to 1967. The board stated further:

[A]s to the invoices, opposer's president obviously could not testify as to the circumstances surrounding the events covered thereby and the in-

1. Abstracted at 161 USPQ 827 (1969).

2. Application serial No. 249,858, filed July 8, 1966, alleging first use on April 22, 1966.

3. Registration No. 825,880, issued March 14, 1967, on an application filed April 8, 1964.

voices could only suggest that two sales of "CHERRY JUBILEE" wine occurred both in 1963. There is no evidence of any probative value to establish any sales from 1963 until May 1967 when opposer allegedly succeeded to Tower Eximpo, Inc.'s interest, in the mark. In summation, opposer's record as to use of the mark "CHERRY JUBILEE" is at best sufficient to show that opposer acquired the rights to the mark "CHERRY JUBILEE" in May 1967 along with an "inventory" of wine, apparently the shipment detained by the Customs Department, and that it promptly disposed of this inventory in minimal shipments after applicant filed its application to register the mark in question. Hence, opposer has failed to sustain its burden of proof with respect to the allegation of prior rights in the unregistered mark "CHERRY JUBILEE" and must, therefore, in support of its claim of damage herein, rely solely on the mark "CHERRY JULEP".

We are in full agreement with the board that appellant's meager evidence is not adequate to establish rights in CHERRY JUBILEE extending to any date prior to its own sales in 1967. We note that Poust admitted that his knowledge of sales by Tower Eximpo, Inc. was limited to the two 1963 invoices. With regard to appellant's own sales, it has not been established that any of them took place prior to appellee's application date.

With regard to appellant's reliance on its prior use and registration of CHERRY JULEP, the board noted appellee's contention that the mark is weak, with CHERRY indicating the flavor of the product and with JULEP having a meaning of "a sweet drink variously prepared, and sometimes medicated." It also defined JUBILEE as "the celebration of any of certain anniversaries" and "any reason or occasion of rejoicing or festivity." It then stated:

We acknowledge that the marks "CHERRY JULEP" and "CHERRY JUBILEE" are alike in that each are two-word marks having in common the first word "CHERRY" and the initial two letters "JU" of the second word. We also recognize that the marks are composed of words possessing well-known dictionary definitions; that the common word "CHERRY" possesses little, if any, trademark significance as applied to cherry flavored wines; and that the words "JULEP" and "JUBILEE" are distinctly different in meaning, significance, and sound. In view of these factors and considering that the marks must be considered in their entireties in resolving the issue before us, it is our opinion that "CHERRY JUBILEE" creates a commercial impression distinctly different from "CHERRY JULEP" and does not, in any way, suggest opposer's registered mark. See: In re General Electric Company [49 CCPA 1186, 304 F.2d [688] 691,] 134 USPQ 190 (CCPA, 1962); and Dan River Mills [Inc.] v. The Yorke Shirt Corporation [55 CCPA 867, 390 F.2d 734,] 156 USPQ 401 (CCPA, 1968).

Appellant cites a number of decisions where likelihood of confusion was found in what it apparently considers circumstances similar to those here, but none of them are particularly pertinent here. An example is Standard International Corp. v. American Sponge & Chamois Co., 55 CCPA 1155, 394 F.2d 599, 157 USPQ 630 (1968) wherein a prior registration of DUST 'N GLOW for a cleaning and polishing cloth was held to preclude registration of DUST 'N WAX for furniture polish. An important consideration in that case was that the common part of the marks, DUST 'N, was found to possess a certain distinctiveness. The facts there contrast markedly with the present case where CHERRY is the name of the flavor and the second words are distinctly different in the three respects pointed out by the board. Accordingly, we are satisfied that CHERRY JUBILEE does not so resemble CHERRY JULEP as to be likely,

where applied to wine, to cause confusion, or to cause mistake, or to deceive.

The decision is affirmed.

Affirmed.