**M–F–G CORPORATION,**
Plaintiff-Appellant,

v.

**EMRA CORPORATION; Dion, Inc.; and Robert and Julie Parsons,**
Defendants-Appellees.

No. 86–1483.

United States Court of Appeals, Seventh Circuit.

Argued March 30, 1987.

Decided April 20, 1987.

Ralph M. Burton, Burton, Parker & Schramm, John E. Nemazi, William J. Schramm, Robert C. Randenburg, Mt. Clemens, Mich., for plaintiff-appellant.

David J. Brezner, Flehr, Hohbach Test Albritton & Herbert, San Francisco, Cal., for defendants-appellees.

Before CUMMINGS, FLAUM, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

SUPERCUT is a registered, incontestable trademark for shears, owned by M–F–G Corp. SUPERCUTS is a trademark for haircutting salons, owned by EMRA Corp. and licensed to a large number of franchised salons, which use it for both the haircutting service and ancillary products such as shampoo. SUPERCUT was registered in 1954, long before EMRA went into business in 1975. By 1984, however, EMRA and its licensees were doing almost $125 million in business annually, while M–F–G's sales were about $12 million—and of the $12 million no more than 4% came from products bearing the SUPERCUT mark. M–F–G filed this suit under the Lanham Act, 15 U.S.C. § 1051 et seq., seeking an injunction against EMRA's use of SUPERCUTS.

M–F–G has two principal complaints. First, in 1983 EMRA applied its distinctive SUPERCUTS logo to the shears used by the haircutters in its salons. Second, the use of SUPERCUTS for the haircutting business in general has at least a potential to confuse. Because its mark is incontestable—meaning that it is no longer subject to challenge with respect to the products to which it applies, see *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985)—M–F–G maintains that it is entitled to an injunction against the use of SUPERCUTS. The district court, however, granted summary judgment to EMRA, 626 F.Supp. 699.

■ EMRA agrees that the incontestable status of SUPERCUT as a mark for shears prevents the application of the SUPERCUTS logo to shears in EMRA's salons. It asserts that since 1983 it has refrained from applying its logo or name to the shears used by its employees, and that it does not sell shears to its customers. Voluntary discontinuation of the offending conduct does not invariably make a case moot, but it may make entry of an injunction unnecessary if there is little likelihood of recurrence. *St. Paul Fire & Marine Ins. Co. v. Barry,* 438 U.S. 531, 538 n. 7, 98 S.Ct. 2923, 2928 n. 7, 57 L.Ed.2d 932 (1978); *United States v. Concentrated Phosphate Export Ass'n,* 393 U.S. 199, 203, 89 S.Ct.

361, 364, 21 L.Ed.2d 344 (1968). The district court withheld relief on the strength of EMRA's promise. This is not an abuse of discretion. M–F–G says that EMRA may welsh; so it may, but having conceded that the use of SUPERCUTS on shears would be a violation of the Lanham Act, and having promised the court to desist, EMRA has every reason to keep its pledge. M–F–G's stated reasons for doubting EMRA's covenant are feeble. A middleman once approached M–F–G seeking shears to peddle to EMRA, but so far as the record goes this was without solicitation on EMRA's part and therefore does not reflect on EMRA's plans. In 1985 a catalog distributed to EMRA's salons listed "logo shears" as an item available from EMRA. This catalog, which promised something EMRA was neither willing nor able to deliver, did not lead to any distribution of offending shears, and later catalogs have dropped the listing. This does not compel the district court to issue an injunction.

■ Whether the use of SUPERCUTS for the salon business itself requires M–F–G's consent depends on the "strength" of the SUPERCUT mark. Incontestability does not help; SUPERCUT is incontestable only for shears. If M–F–G popularized the word "supercut" and gave it a meaning on which EMRA is trying to capitalize, then the trademark laws offer relief. But if M–F–G is simply trying to appropriate part of the language that it has neither created nor enriched, and to deny EMRA a natural description for its products, then M–F–G must lose. See *Scandia Down Corp. v. Euroquilt, Inc.,* 772 F.2d 1423, 1429–31 (7th Cir.1985); *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.,* 781 F.2d 604, 609–10 (7th Cir.1986). The district court canvassed the traditional indicators of the strength of the SUPERCUT mark and found that none favors M–F–G. The mark is "descriptive", meaning that it identifies an attribute of the product; this suggests both that the mark does not extend beyond the product and that its employment has not added new meaning to the word. There is no evidence of confusion; the SUPERCUTS logo is distinctive, while the SUPER-

CUT mark is not used in a logo (at least the record contains none). The middleman who approached M–F–G for shears demonstrated that the trade knows very well where to obtain SUPERCUT shears. M–F–G, which sells only to dealers and salons, does not contend that consumers could be confused. The mark was not well promoted. On M–F–G's own evidence about its advertising, attributing 10% of its ads to products bearing the SUPERCUT mark, less than $3,000 per year over a period of 25 years has been spent promoting the mark. M–F–G makes much of the fact that EMRA had to be charged with knowledge of the SUPERCUT mark when it opened its first salon in 1975 and actually knew of the mark in 1979, before it embarked on its expansion program. But it is lawful to use a mark that does not infringe some other; intentional infringement creates problems, but intentional use of a mark that EMRA had every right to use is not itself a ground on which to draw an adverse inference. See *Ziebart International Corp. v. After Market Associates*, 802 F.2d 220, 227 (7th Cir.1986). Businesses are entitled to plan their conduct to take advantage of legal rights; this planning, actual or imputed, may not be used to diminish the rights with which the firm began.

█ M–F–G's remaining arguments, including a claim of "dilution" under state law, are insubstantial. There was no proof of dilution or any other injury, despite extensive discovery. The president of M–F–G offered an affidavit that an unknown person at a trade show asked in 1984 whether M–F–G had gone into the salon business. A single obscure query from an unidentified person does not show confusion, dilution, or anything else, considering that M–F–G has been associated with salons for a long time. The claim based on "reverse confusion"—the impression that the senior mark's owner is a subsidiary of the junior but larger firm—fails because the record does not permit an inference that there has been confusion of any stripe.

At oral argument M–F–G described its real concern: a belief that as EMRA grows and uses competitors' goods, M–F–G will be relegated to a smaller portion of the salon business, the traditional purchasers of its products. Things should work the other way 'round in the longer run. M–F–G has EMRA over a barrel. To use shears with its logo, or to sell shears to the public, EMRA needs M–F–G's consent. It should be possible for these corporations to work out a mutually beneficial deal, now that their trademark rights have been settled. The place for that arrangement is over the bargaining table rather than over the bench.

AFFIRMED